Good morning, Your Honors, Kara DeVito for Appellant Mark Dorsey. You look very happy this morning. The Court asked me to come prepared to address certain questions about whether there was a problem with the pattern instruction in this case. I had to read the pattern instruction several times to see what the Court was asking me to see, but it is true the pattern instruction uses the phrase substantial distance or talks about brief distances or substantial distances in defining whether or not there was movement beyond that which is merely incidental in the underlying robbery. To that extent, since the case law talks about more, since the case law talks about a change in environment or the context of the environment or the nature of the movement, the pattern instruction doesn't fully instruct the jury on the incidental to element. Are you changing your posture in the brief and in the trial in the lower court? No, Your Honor. I'm simply acknowledging the Court asked me first to address whether there's a problem with the pattern instruction. It appears there is. Yes. It seemed to me that I saw a problem with the pattern instruction, but not with the one that you were complaining about. So now, is this all harmless error? No, Your Honor. Unfortunately, my client didn't address the pattern instruction in the State court below, and I not only did not complain about the pattern instruction in the opening brief, in two different places I expressly said I have no quarrel with it. But if there is a problem with the special instruction that was given here, if I am correct in the argument that I raised on Mr. Dorsey's behalf, and if there was a due process violation in instructional error, then this Court looks to the overall charge to the jury to see whether or not any instruction could have cured that harm. And in Mr. Dorsey's reply brief, we do argue that no other instruction that was given explained the correct standard to the jury. So in reviewing whether or not there was harmless error here, in looking at the pattern instruction, it did not explain the correct standard and, in fact, it misinstructed the jury on the incidental-to aspect of the problem. Maybe we've got a plain error problem, which is even a higher standard. Yes, Your Honor, that, too, at this point, now that I've seen what the problem is with the pattern instruction. Well, so how about the exhaustion problem? Can we actually consider it? Well, as I said, in looking at it as a matter of prejudice rather than instructional error on its own, I believe the Court can look to the pattern instruction. But because it wasn't argued in the State court, it was not exhausted. And because I approved of it in the brief, I probably have waived it as an error that stands on its own. It has to be taken within the context of the entire charge to the jury in order to be cognizable, I believe. Looking at the facts, your client took these people a long distance back to the safe and then he took them out into the outside. It's hard to look at the facts and not conclude that there was a kidnapping here. Well, Your Honor, the California cases talk about how movement, even within a store that's merely to accomplish the robbery, is supposed to be excluded from this analysis of whether there was further movement, not incidental, and further movement that increased the risk of harm. When you look at the facts in this case, Mr. Dorsey did move two people, apparently a goodly distance, within this store, but he was moving them to the safe. He was moving them to accomplish his objective of robbery. Most of the time, most of the temporal element here was spent moving them to the safe, finding someone who knew how to open the safe, taking the money out of the safe and putting it into a bag, and then, by comparison, a brief period of time and a much less further movement occurred when he brought these people outside. As soon as they were outside, he was stopped because there were police there, and one of his two victims, in fact, disabled him, attacked him and caused him to drop this gun. But it was a pretty dangerous situation outside, was it not? People were put in harm's way of the cops. And also, your client said, if the cops go down, you do too, or I go down, you do too. Mr. Dorsey did make those threats, Your Honor, and he was armed with a firearm. But still, what is the increase in risk of harm if a robbery is going to be accomplished with a firearm? There's already a risk of harm in the robbery, especially if it's accomplished by force of fear. And there is a risk of harm any time a firearm is brandished. The increase in the risk of harm here is apparently perhaps just psychological harm with my client saying to these people, if I'm caught, I'm not going to go down with me, or something to that effect. But as I said, one of the two victims, in fact, had the wherewithal or the courage to stop Mr. Dorsey once they were outside. So I'm not sure there was even that much psychological harm, at least as to that victim. Thank you, Your Honor. All right. Thank you. Good morning, Your Honors. Deputy Attorney General Anna Lee Brody, on behalf of the Respondent, I'd like to assert that as this Court has wondered, any attack, any facial challenge to the Calgic 9.4 pattern during instruction is not exhausted. It's quintessentially a State law issue, which must be litigated by the State courts. And it's also waived, as Petitioner admits in his brief on page 15 of the opening brief, this issue has been waived, any challenge to the pattern instruction. And as far as making, as looking at the instruction in terms of considering the instructions as a whole or as part of a harmless error argument or analysis, we maintain there is no error in this case, either in the pattern instruction or the special instruction. And this Court need not reach examination of the pattern instruction because the special instruction given was a correct statement of California law. The as far as the pattern instruction, this Court's concerned about the pattern instruction being confined to distance only. Movement, the pattern instruction specifically says the movement cannot be, it must be more than brief, slight, or trivial. And these are qualitative assessments that are not confined to inches, feet, miles. These are what the jury considers in determining whether the movement was substantial. And there are factors to be considered. They're not elements. These are not hurdles for the prosecution to leap in proving the case. And it's important to note that although Rayford and Salazar and other California cases have mentioned the scope and nature of the movement, the context of the environment, those are just factors to be considered by the jury. And that Rayford and Salazar, both cited in this Court's order, are sufficiency cases. Those are cases where the courts repeated the Daniels two-prong standard and then decided that the evidence met that standard and supported the jury's finding. And, in fact, in Salazar and Rayford, the courts both mentioned on page 23 of Rayford, the Court says the jury here applied the Daniels test, and the Court went on to find the evidence sufficient. In Salazar, the Court noted that the jury was instructed with the Daniels two-prong test and stated, Salazar conceives this instruction was proper under Rayford and does not assert instructional error. I venture these are not cases that these cases do not, and indeed no California Supreme Court case that I found, has held that a jury must be instructed on not only the elements of the crime, but these factors to be considered. Now, it's a proper thing to instruct a jury with, and either party can request a special instruction, as happened in this case, and the special instruction can lay out the factors for the jury to consider. And which brings me to this question, the special instruction in this case. California case law repeatedly emphasizes that the two-prong Daniels test, the prongs are interrelated. The jury considers the entire movement. They look at this big, messy, ongoing crime, this series of events, and they look at the facts and they vet the facts against these two prongs in the Daniels test. And does the special instruction tell the jury not to consider or to consider incidental movement? No. And in fact, the pattern instruction specifically says you cannot consider or you cannot use incidental movement to find that this movement was substantial. So the jury, the pattern instruction tells them the movement has to ultimately be non-incidental. And the special instruction tells them to look at everything, look at where the victim was before, look at where they ended up, look at all of this in your consideration, but you have to ultimately find, according to the first prong, that it was substantial and non-incidental, and according to the second prong, that it substantially increased the risk of harm. So Petitioner would have the jury instructed as a matter of law in this case that the movement from the safe no, I'm sorry, from the jewelry counter to the safe is incidental to the robbery, and that as a matter of law, they cannot consider that. That's just not how it works. The jury looks at all the evidence. They're guided by the instructions. They were properly instructed in this case. And they ultimately found that the movement was substantial and substantially increased the harm. And even assuming, let me just briefly touch on the harmless error, this Court was considering harmless error analysis for this case. I maintain there was no error, but even if, well, in Mitchell v. Esparza, which I provide to the Court and to counsel, because it was not mentioned in my brief, the United States Supreme Court reaffirmed recently that the trial court's failure to instruct a jury on all the statutory elements of an offense, this is at page 11, is subject to harmless error analysis, and therefore not a structural error, a structural error, and that habeas relief is only appropriate if the State court applied the harmless error review in a way that was objectively unreasonable. Now, here the State court found that there is no error in this special instruction, and that is not objectively unreasonable, because let's assume that State compellants or, I'm sorry, Petitioner's argument that this special instruction told them to consider non-incidental no, to consider incidental movement in deciding whether the movement was substantial. And that would be, under their facts, from the dual recounter to the safe. Well, the movement, the risk of harm there, and we're talking about the second prong in particular, the risk of harm at that stage of the robbery was the same as throughout this robbery and kidnapping. He had a loaded gun. He was threatening to kill everyone. He marched them to the safe. They put the money in, and the risk only got more substantial at that point. So I guess that the risk of harm that is over and above that present in the crime of robbery was continuous throughout this whole crime. And any error of the rule of law in this particular case, I think, would be an error of the rule of law in this particular case. And I think that's the reason why the State court found that there is no error in this particular case. The movement from the safe to the outside, would that be sufficient in and of itself? Yes, Your Honor, absolutely. In fact, the danger increased, as you noted earlier, when he moved these terrified victims at gunpoint out into a flanks of police officers who were waiting. In fact, when one of the victims took it upon himself to tackle the Petitioner with his loaded gun, it was extremely dangerous. And that's a risk that's not part of a general robbery. It's not a general standstill robbery. It's not a general – it's just that is something that was unique to kidnapping for robbery. They were essentially hostages. This was a hostage situation. And it's important to note, too, I think, that in terms of moving victims around within premises, the California case that talked about that, the cases that have – the case law that has evolved around that fact pattern have been apartments, houses, jewelry shops, you know, where they're moved to the safe or moved to an office. This is a big department store. This is – they moved almost 300 feet, maybe more, to the safe through an open department store with people. Many things can go wrong. And then outside, another 150 feet outside to this – to where these police officers are waiting, no doubt, with weapons drawn in intense anticipation of this hostage situation. So I think factually this case is clearly – the evidence supports a verdict, a finding, the jury's finding that the movement was substantial in terms of distance and scope and nature and context, and that the movement substantially increased the risk of harm under that two-pronged Daniels test and considering all the evidence before the jury. All right. Thank you. Thank you. Any rebuttal? The special instruction with which Mr. Dorsey – to which Mr. Dorsey objected actually says that any determination of the increase in the risk of harm involves a comparison of the victim's physical location before and after the movement. And it speaks to the movement as one entire act. It doesn't discuss at all incidental to the robbery. The element of incidental to the robbery is simply eliminated by that last sentence of the special instruction. I believe that's why it's so problematic. I also point out to the Court that a number of California cases, particularly Salazar, which is one of the cases the Court asked us to talk about today in its order, at page 347 of the official report, Salazar recognizes that the commission of a robbery may frequently require that a victim be moved to the property which is the object of a robbery. The special instruction's last sentence completely eliminates that concept. More than that, it was prejudicial in the context of this trial because the attorneys in closing argument would not have argued the difference in movement from the floor to the safe or whatever point in time or place they chose to be incidental to the robbery. They couldn't argue it that way because they were constrained by the jury instruction to argue that which the jury was charged with. Your argument might be a good argument and may be. I'm considering the circumstances. It seems to me that once they got to the safe, had the robber bolted and ran from the store alone, that'd be one thing. He took one of the employees hostage, held a gun on her, I believe. Had the other employee carried the money, he didn't carry the money. So he had two hostages and he's implicating them in the robbery and he walks outside many feet into the arms of the police. And in fact, it caught and at that point it explodes because the one employee bolts, the other one steps in front of him. So he didn't, the robbery at the, even if he excluded the robbery at the beginning, after the robbery occurred, that was so risky and the movement was so, had nothing to do with the robbery, he could have left it by himself. Am I missing something? No, you're not, Your Honor. And if you'll please excuse me, this is something I'm going to say that I've never argued in the briefs before and I don't mean to blindside the Court or opposing counsel. Robbery is an ongoing crime. It's not completed until the robber reaches a place of comparative safety. I've been arguing all along the robbery ended when my client took the money from the safe. All he did at that point was acquire the goods. He walked outside with these two hostages, but he never reached a place of comparative safety. Well, that would be an interesting theory if he dropped the money and said, oh, mistake, I'm out of here. But he didn't. He had one of the employees carry the money out. That was the robbery. I mean, robbery, the object, is take the money, most robbers. Yeah. But still, we come back to whether all the instructions taken as a whole were correct in this case. They're not, and I want to throw one more thing into the mix, which I noticed last night. I was reading the statute again and again, but noticed for the first time that the phrase substantial distance does not exist in the statute. Substantial distance appears to be something the case law has imported from simple kidnapping, which is Penal Code 207. Penal Code 209, which speaks to kidnapping for robbery, speaks only in terms of movement. Does the Court have any questions? Thank you, Your Honor. Thank you. The matter will stand submitted. We'll pick up on Sparling versus Da'u.
judges: B. Fletcher, Pregerson, Brunetti